Curia, per Johnston, Ch.
It is not thought necessary to quote cases establishing the general proposition, that if property be given to the heir of a person living at the time of the gift, or when it comes to take effect, the gift must fail. Brett vs. Rigden, Plowd. 341.
A few authorities, indiscriminately collected, will shew the strength of the rule, that technical words are to be taken in their technical sense, unless he who employs them appears, from the context, to have used them in a different sense; and that the mere failure of the instrument to effect an intention' conjectured from extensive circumstances, will not justify the court in departing from a technical construction.
Prima facie, words must be understood in their legal sense; unless by the context, or express words, plainly appearing, intended otherwise. 5 Yes. 401.
*401 It is a rule of construction, not to make any intendment contrary to the plain and usual sense of the words, unless from other parts of the will plainly appearing not intended to have that extensive operation. 7 Ves. 368.
Words used by a testator shall be interpreted according to their legal effect and operation, unless it clearly appears that he intended to use them in a different sense. Wilson vs. Tigler, 2 B. & B. 204.
In the construction of a will, it shall be presumed that the testator was acquainted with the rules of law. Langham vs. Sanford, 2 Meriv. 22.
The court never alters nor adds to a will, without necessity. 7 Ves. 128.
Words having an obvious (or ascertained) meaning, not to be rejected (or warped) upon a suspicion that the testator did not know what they meant. 8 Ves. 306.
The mere improbability that a testator could have meant what he has expressed, neither authorizes the rejection of his words, nor renders the devise void for uncertainty. Chambers vs. Brilsford, 2 Mer. 25.
Though the testator may not have contemplated the event which has happened, that will not affect the construction. 7 Ves. 369.
If the meaning of a will (or of the words in it) be ascertained, any reasoning from supposed cases will not induce the court to make a different construction; but can only lead to a conclusion that the testator did not foresee all the consequences. 15 Ves. 103.
In Attorney General vs. Grote, 3 Meriv. 316, (a) Sir W. Grant said : “ To authorize a departure from the words of a will, (or from the accepted meaning of the words,) it is not enough to doubt whether they were used in the sense which they properly bear. The court must be quite satisfied that they were used in a different sense ; and ought to be able, distinctly, to say what the sense is in which they were meant to be used.” And Lord Eldon laid it down that “individual belief ought not to govern the construction ; it must be judicial persuasion.”
I think whoever will allow due weight to these authorities, will hesitate to adopt any construction based merely upon the reasonable intention of the testator, to be conjectured from the *402 circumstances of his family at the time, directly at variance with the legal meaning of the words used by himself to express his intention, and unsupported by any contrary meaning annexed to the same words in the context of his will. To take such liberties with his words, is not to interpret his will, but to make it; and will throw the rules of law, and the rights of men under them, into an intolerable uncertainty.
As no part of the context of this will has been or can be pointed out in which the testator has not used the word “ heir” in its technical sense, upon what ground are we to infer that it was otherwise used in the clause in question ? Are we to infer it from the fact, that in the events which have happened, it could not take effect 1 The authorities referred to explicitly lay it down, that such a ground is quite insufficient.
If you reject the word “ heir,” you must be able to say, with distinctness, what other word the testator meant to employ. Now what word will you substitute, which, in other events, might not as seriously have disappointed the supposed intention of the testator ? Did he mean “ children,” or “ issue 1” If the former, then, in certain well krown events, some of the children might have been excluded, as if born after' the testator’s death, or after the death of the life tenant; and if some of the children had died leaving issue, the issue would not have taken. If he meant issue, then, according to Campbell vs. Wiggins, (a) children and their descendants, taking as purchasers, would have taken together and per capita, and thus have received shares very different from those intended.
Two cases have been relied on, to pervert the meaning of the testator’s word “ heirs” from its technical meaning. But in my opinion, the question presented here could not have occurred in one of them; and the other is an authority for a construction directly contrary to that contended for. The first of them is Loveday vs. Hopkins, Amb. 273. Testator devised as follows : “I give to my sister Loveday’s heirs £600.” “I give to my sister Brady’s children, equally, £1000.” At the making of the will, Mrs. Loveday had two children — the plaintiff and a daughter named Martha. Martha afterwards died in testator’s life time, leaving three children. Mrs. Loveday survived the testator, and was alive at the hearing of the cause. The plaintiff, one of the children, filed his bill against the executrix for the whole £600. The children of Martha were made defendants.
*403 The executrix, who was residuary legatee, by her answer, and at the bar, disclaimed all right to the £600. Question ; whether the testator intended to include the children of Mrs Loveday, and their descendants, in the word “ heirs and whether the children of Martha, the deceased daughter of Mrs. Loveday, were entitled, as such, to a moiety of the £600, which (it was assumed) would have been their mother’s share, if she had survived the testator.
Sir Thomas Clark, M. R. was clearly of opinion that the testator intended to give the £600 to the children of Mrs. Loveday, the same as in the subsequent clause to Mrs. Brady’s children, and had not their descendants in view — and decreed the whole £600 to the plaintiff.
Now, it is evident from the brief report by Ambler, that the only person who could have raised the question whether “heirs” meant “ children” in this case, was the executrix and residuary legatee, and she disclaimed. Upon this disclaimer, the only ground upon which either the plaintiff or Martha’s children could contest the right as among themselves, was the- assumption that “ heirs” in this clause meant “ children and that construction was taken for granted by both parties. It was conceded, that if Martha had survived the testator, as well as the plaintiff, she, as well as he, would, as children of Mrs. Loveday, have been entitled to a share of the £600, notwithstanding their mother was still living. This construction being assumed, the only question in the case was whether the term “ children” extended to “grand-children,” the descendants of children. And the import of the decision was that it did not; and this is all that was decided in the case.
The other case is Wilson vs. Vansittart, Amb. 562. Testator made his will in India, in his own hand writing, and after several legacies, gave the residue of his estate, consisting of personalty, to his brother John, (the plaintiff) and to his heirs male, equally to be divided among them, share and share alike.
Three questions : 1. Whether the father shall take the whole, rejecting the words equally to be divided 1 2. Whether the father and sons shall take at the same time, as tenants in common ? 3. Whether the father shall take for life, and after his death the residue shall go to all his sons equally 1
Lords Commissioners Smith and Bathurst were clearly of opinion that, according to the true construction, the father shall take *404 the whole for life, and then to go to the sons equally, and decreed accordingly.
Now, the plain import of this decision was, that by construction of the will, the gift to the sons was after their father’s death, when they were heirs and answered to the description. They were not allowed to take with their father, as tenants in common, because during his life they were not “ heirs wherefore they were postponed until they could come up to that description.
This case seems, to me, to support the principle of the decree in the present case. It is ordered that the decree be affirmed, and the appeal dismissed.
Harper and Dunkin, CC. concurred.

 Cited in Wigram on Wills, p. 30, pi. 45, and p. 200, App. No. 2.

[a] Rice Eq. 1Ó.